

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3401 | **DATE** | 9/27/2001 |
| **CASE TITLE** | Hakim Iddir, Hadjira Iddir, Juan Arcenio Llivi vs. Immigration and Naturalization Service, Brian Perryman, District Director, Chicago INS, Madeleine K. Albright, in her official capacity as Secretary of State, United States Department of State, United States Department of State, and United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion by defendants to dismiss plaintiffs' complaint pursuant to 12(b)(1) and 12(b)(6) [16-1] is granted.

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | SEP 27 2001 date docketed | 20 |
| ✓ | Docketing to mail notices. | FILED FOR DOCKETING | | |
| ✓ | Mail AO 450 form. | 01 SEP 27 PM 12: 36 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HAKIM IDDIR, HADJIRA IDDIR, and JUAN ) 
ARCENIO LLIVI, )
 )
                        Plaintiffs, )
           v. )      Case No. 00 C 3401
 )
IMMIGRATION AND NATURALIZATION )
SERVICE, BRIAN PERRYMAN, District )
Director, Chicago INS, MADELEINE K. )
ALBRIGHT, in her official capacity as Secretary )
of State, United States Department of State, )
UNITED STATES DEPARTMENT OF STATE, )
and UNITED STATES OF AMERICA, )
 )
                      Defendants. )

**DOCKETED**

**SEP 2 7 2001**

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Hakim and Hadjira Iddir ("Iddirs"), a married couple, and Juan Arcenio Llivi ("Llivi"), have filed this suit for mandamus, declaratory judgment, and other relief against defendants, the Immigration and Naturalization Service ("INS"); Brian Perryman, the District Director of the Chicago INS; Madeleine K. Albright,[1] Secretary of State; the United States Department of State; and the United States of America. Plaintiffs seek to compel defendants to complete the adjudication of their applications for adjustment of status under the Diversity Immigrant Visa Program ("Diversity Program") of the Immigration and Nationality Act ("INA"), as well as a declaration by this court that there are no just grounds to suspend issuance of a visa

---

[1] The court recognizes that Madeleine Albright is no longer Secretary of State, but will use the names utilized by the parties for the sake of convenience.

to the plaintiffs. Defendants move to dismiss the complaint pursuant to both Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendants' motion is granted.

## Background

The Diversity Program was created to distribute permanent resident visa numbers to individuals from countries which have had low rates of immigration into the United States. *See* INA § 242, 8 U.S.C. § 1153(c). Potential diversity immigrant visa recipients who are in the United States in lawful status may apply to the INS to adjust their status to that of lawful permanent resident under INA § 245, 8 U.S.C. § 1255. The Attorney General may, in his or her discretion, adjust a "nonimmigrant" alien's status to that of an "alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." INA § 245(a), 8 U.S.C. § 1255(a). In addition, the INS must conduct a fingerprint check by the Federal Bureau of Investigation ("FBI") and an interview of the applicant before adjudicating adjustment of status applications. Individuals are selected through the Diversity Program to apply for a particular fiscal year. Pursuant to 8 U.S.C. § 1154(a)(1)(I)(ii)(II), aliens who are selected through the Diversity Program during a particular fiscal year "remain eligible to receive visas only through the end of the specific fiscal year for which they were selected." If their application is not adjudicated by the end of that fiscal year (September 30, 1998 for fiscal

year 1998), then a visa is no longer immediately available, and their application will be denied.

The Iddirs and Llivi were among the 97,319 entries randomly selected through the Diversity Program to apply for fiscal year 1998 (October 1, 1997 to September 30, 1998). However, only 55,000 diversity visas were available for that year. In fact, only about 51,000 numbers were actually issued. Plaintiffs claim that each of them submitted their applications for adjustment of status after being informed of their selection. Llivi received a letter dated September, 1997 informing him that there was a year-long wait for interviews. He did not receive further correspondence until December 4, 1998, when the INS requested in a letter that he appear on December 24, 1998. On or about January 26, 1999, the INS district director denied Llivi's application for adjustment of status because the deadline for fiscal year 1998 had passed and the application was no longer valid.

The Iddirs received a letter dated June 30, 1998 informing them that there was a year-long wait for interviews. They did not receive any more correspondence until October 27, 1999, when the INS requested in a letter that they resubmit their fingerprints. They complied, and later appeared for their final interview for adjustment of status on May 3, 2000. During the interview, however, the Iddirs claim that the INS hearing officer told them that their applications were in order but were invalid because the deadline for fiscal year 1998 had passed. The Iddirs claim that the hearing officer "indicated that someone in the INS office had misplaced their file but 'there was nothing to do about it, and the case was closed.'" (Compl. ¶ 28.) Plaintiffs filed this suit on June 6, 2000. On or about December 6, 2000, the INS district director denied the Iddir's applications for adjustment of status because there was no visa immediately available to them.

Plaintiffs claim that defendants "unreasonably delayed and failed to process" their applications for adjustment of status. (Compl. ¶¶ I-30, III-30.) They claim that defendants' delays have "deprived Plaintiffs of their lawful, legal permanent residence status to which Plaintiffs are entitled under the immigration and nationality laws." (Compl. ¶ I-32.) In Counts I and III, plaintiffs seek an order of mandamus, pursuant to 28 U.S.C. § 1361, compelling defendants to adjudicate their applications. Plaintiffs also seek a declaratory judgment from this court pursuant to 28 U.S.C. § 2201. In Counts II and IV, plaintiffs ask the court to declare that "there are no just grounds to suspend issuance of all appropriate documents, including the issuance of a visa," to the plaintiffs. (Compl. ¶¶ II-31B, IV-31B.)

Before the court is defendants' motion to dismiss pursuant to Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Plaintiffs claim that jurisdiction is conferred by the mandamus statute, 8 U.S.C. § 1361; by federal question jurisdiction pursuant to 8 U.S.C. § 1331; and by the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.

## Discussion

In ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). However, the court is not required to accept as true those allegations in the complaint "which tend to establish jurisdiction where a party properly raises a factual question concerning the jurisdiction of the district court to proceed with the action." *Grafon Corp. v. Hauserman*, 602

4

F.2d 781, 783 (7th Cir. 1979). In such a situation, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing*, 999 F.2d at 191; *Grafon*, 602 F.2d at 783. "In cases where the jurisdiction of the court is challenged as a factual matter, the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof." *Grafon*, 602 F.2d at 783. In this case defendants have raised the question of the court's jurisdiction by moving to dismiss the complaint for lack of subject matter jurisdiction. *See id.* at 783, n.3.

A. INA § 242(a)(2)(B)(i)

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, which contained both temporary and permanent provisions that amended the jurisdictional provisions of the INA. Defendants argue that one of those amendments, INA § 242(a)(2)(B)(i) ("Section 242"), 8 U.S.C. § 1252(a)(2)(B)(i), divests this court of jurisdiction to review a denial of an application for adjustment of status. That section provides, in relevant part, "Notwithstanding any other provisions of law, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 [governing adjustment of status] of this title . . . ." 8 U.S.C. § 1252(a)(2)(B)(i). Defendants argue that whether or not the INS was at fault for the delay in processing plaintiffs' applications for adjustment of status, it in fact denied those applications, and that constitutes a "judgment regarding the granting of relief." Plaintiffs argue that they do not seek "review [of] any judgment" by the INS; rather, they seek to compel the INS

5

to adjudicate their applications in the first place, which it has failed to do altogether.

"'[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review.'" *Board of Governors of the Federal Reserve System v. McCorp Financial Inc.*, 502 U.S. 32, 44 (1991) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967)). "[T]he presumption favoring judicial review of administrative action may be overcome by inferences of intent drawn from the statutory scheme as a whole." *Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (1984). However, "where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Id.*

When courts interpret immigration statutes, ambiguities in the law are interpreted in favor of the alien. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Mart v. Beebe*, 94 F. Supp. 2d 1120, 1123 (D. Or. 2000). In addition, restrictions on jurisdiction are construed narrowly, and courts will not assume that jurisdiction has been repealed unless the statute says so explicitly. *See McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 496 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670-72 (1986).

The court agrees with plaintiffs that the INS has not adjudicated their applications. Hakim Iddir submitted his application for adjustment of status in August, 1997. His wife, Hadjira, was also an applicant as Hakim's derivative spouse. On June 30, 1998, the INS wrote to Hakim and told him that there was a one-year wait for interviews. However, at that time, there were only 3 months left in fiscal year 1998. To make things worse, the INS' letter told Hakim not to "inquire about the status of your application prior to twelve months of receipt, it will only

6

further delay the processing time." (Letter from INS District Director to Hakim Iddir, Compl. Ex. D.) Eventually, on October 20, 1999 (13 months after fiscal year 1998 had expired), the INS wrote to the Iddirs asking them to resubmit their fingerprints. They complied within one week. The INS then wrote to the Iddirs informing them of their final interview scheduled for May 3, 2000. At that final interview, the INS official told the Iddirs that their case was closed (in fact, it had been for 19 months). Plaintiffs then filed this suit in June of that year. Finally, on December 6, 2000, the district director "denied" plaintiffs' application because the deadline for fiscal year 1998 had passed. That was 39 months after the Iddirs sent their application, 26 months after fiscal year 1998 had expired altogether, and a full *6 months after this suit was filed.*

Llivi's treatment by the INS is only slightly less disturbing. After sending his application for adjustment of status in September, 1997, Llivi was eventually asked by the INS to appear on December 4, 1998, which was 2 months after the end of fiscal year 1998. He finally received word of his application's "denial" on January 26, 1999 because the deadline had passed. That was before this suit was filed, but still 16 months after he originally applied for adjustment of status.

The court is not unsympathetic to the plight of the INS in having to process nearly 100,000 applications each year for adjustment of status. However, it is clear to this court that the denial of plaintiffs' applications for adjustment of status was not a "judgment," as envisioned by Section 242. The jurisdictional language in Section 242 does not divest this court of jurisdiction in the case of an administrative oversight or delay, which causes the INS, in essence, to lose the power to adjudicate the application.

7

In *Paunescu v. INS*, 76 F. Supp. 2d 896, 900 (N.D. Ill. 1999), the court rejected the argument that "this court does not have jurisdiction to 'review' the Attorney General's refusal to entertain plaintiffs' applications." In that case, the plaintiffs had brought an action for mandamus and declaratory judgment seeking to compel the INS to adjudicate their applications for adjustment of status pursuant to the Diversity Program before the end of the fiscal year. The court granted preliminary injunctive relief, but the INS still failed to process the applications before the deadline. Nevertheless, the court held that it had jurisdiction, granted the plaintiffs' motion for summary judgment, and ordered the INS to process the plaintiffs' applications. *See id.* ("Were plaintiffs contending that they had been denied relief, this court likely would not have jurisdiction over their claims."). Likewise, here plaintiffs are not contending that they have been denied relief; rather, they claim that they have been denied an adjudication of their applications.

Defendants rely almost entirely on *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000), which also involved plaintiffs who had applied for adjustment of status through the Diversity Program. However, *McBrearty* is clearly distinguishable from the present case, as the plaintiffs there sought judicial review of the *denial* of their adjustment applications. The reasons for the district director's denial included the fact that plaintiffs had "sought to have their applications to participate in the visa lottery, though filed with the State Department (as was required), treated as the applications to the Attorney General for adjustment of status," which they could not do. *Id.* at 986. Thus, their applications were untimely–through no fault of the INS. In the present case, the district director failed altogether to adjudicate plaintiffs' applications. Instead, the INS summarily denied the applications after failing to schedule their

8

final interviews before the end of fiscal year 1998. In the Iddirs' case, the district director did not even *deny* their application until 6 months after this suit was filed. Thus, *McBrearty* does not apply to this case, and Section 242 does not divest this court of jurisdiction.[2] To the extent that other courts in this district have relied on *McBrearty* to come to the opposite conclusion, this court respectfully disagrees. A "denial," based on the INS' failure to adjudicate the application until it is too late to do so meaningfully, is not an "adjudication."[3] Defendants' argument that the INA precludes jurisdiction fails.

B. Administrative Remedies

Defendants also argue that this court lacks subject matter jurisdiction because plaintiffs have failed to exhaust the administrative remedies available to them. Generally, parties must exhaust all available administrative remedies before seeking federal judicial review of an adverse administrative determination. *See McCarthy v. Madigan*, 503 U.S. 140 (1992); *Yanez v. Holder*, 149 F. Supp. 2d 485 (N.D. Ill. 2001). "The requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." *Howell v. INS*,

---

[2]Plaintiffs also argue that Section 242 should not apply because it applies only to orders of removal. However, because the court finds that the district director's failure to process plaintiffs' applications was not a "judgment," this court has no occasion to address this argument.

[3]*But see Kudina v. INS*, 2001 WL 1064789, *3 (N.D. Ill. Sept. 10, 2001) ("Plaintiffs cannot maintain that their applications were denied but never adjudicated. A denial is an adjudication. As plaintiffs [sic] applications for adjustment of status were adjudicated and denied, their claims are not reviewable."); *Amoakowaa v. Reno*, 94 F. Supp. 2d 903, 905 (N.D. Ill. 2000) (dismissing case for lack of subject matter jurisdiction even though plaintiffs' application was denied because the INS failed to process their fingerprints); *Dansowaa v. Reno*, No. 99-7223 (N.D. Ill. Nov. 7, 2000) (Defts.' Mem. Supp. Mot. Dismiss Ex. 4) (dismissing case where plaintiffs' applications were denied because INS did not process them in time); *Holasek v. United States Dep't of Justice*, 2000 WL 1761082 (N.D. Ill. Nov. 30, 2000) (same).

72 F.3d 288, 291 (2d Cir. 1995) (internal quotations omitted). "If a party fails to exhaust administrative remedies, then the court may dismiss the action because subject matter jurisdiction does not exist." *Id.* (citation omitted).

However, there are exceptions to the exhaustion rule. Exhaustion of administrative remedies may not be required when: (1) the requirement would subject an individual to an unreasonable or indefinite time frame for administrative action; (2) the administrative agency lacks the competence to resolve the particular issue; or (3) administrative appeal would be futile. *See Yanez*, 149 F. Supp. 2d at 489 (citing *McCarthy*, 503 U.S. at 146-48). Other exceptions have been recognized by courts as well, such as when the available remedies provide no genuine opportunity for adequate relief and in certain situations where a plaintiff has raised a substantial constitutional question. *See Guitard v. United States Secretary of Navy*, 967 F.2d 737, 740 (2d Cir. 1992).

Defendants once again cite *McBrearty*, in which the plaintiffs' applications for adjustment of status under the Diversity Program were denied because the plaintiffs failed to properly file their applications. 212 F.3d. The plaintiffs sought review of that denial, but the Seventh Circuit held that their suit was "premature, since, as the plaintiffs acknowledge, they could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal (i.e., deportation) proceedings against them." *Id.* at 987 (citing 8 U.S.C. § 1252(a)(1); 8 C.F.R. §§ 240.15; 245.2(a)(5)(ii)). "They thus have failed to exhaust their administrative remedies." *Id.*

Once again, *McBrearty* is distinguishable, because it involved a denial of applications as

a result of the plaintiffs' error, not the INS'. In the present case, plaintiffs complied with every requirement imposed on them by the Diversity Program in order to have their applications processed in a timely fashion. But for the INS' delay in scheduling their interviews, their applications would have been adjudicated before the end of fiscal year 1998. This renders applicable the exceptions to the administrative remedies exhaustion requirement. First, an administrative appeal would be futile. Defendants in this case have argued that the INS is unable to grant visas to plaintiffs because fiscal year 1998 has come and gone, thereby extinguishing any available visa numbers. Thus, it is quite apparent that any appeal made by plaintiffs during removal proceedings would be summarily rejected. For this same reason, the available remedies also provide no genuine opportunity for adequate relief. As the court stated in *Marcetic v. INS*, 1998 WL 173129, *2 (N.D. Ill. April 6, 1998), albeit in a different context: "Can plaintiff be . . . ordered deported . . . because of [an] administrative error? We think not." Thus, the exceptions to the exhaustion requirement apply and plaintiffs have no recourse other than the courts to realize their rights. *See Paunescu*, 76 F. Supp. 2d at 901 (holding that plaintiffs need not wait for removal proceedings where the INS had not adjudicated their applications); *see also Fu v. Reno*, 2000 WL 1644490, *3 (N.D. Tex. Nov. 1, 2000) (holding that waiting for an agency to process applications is not an administrative remedy). *But see Kudina*, 2001 WL 1064789, at *4; *Dansowaa*, No. 99-7223; *Holasek*, 2000 WL 1761082, at *2. Defendants' argument based on exhaustion of administrative remedies fails.

C. Jurisdictional Basis

1. *Mandamus*

The court further finds that it has mandamus jurisdiction to compel the INS to adjudicate

11

plaintiffs' claims. Pursuant to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency therefor to perform a duty owed to the plaintiff." In order to qualify for mandamus relief, a plaintiff must show that: (1) he has a clear right to the relief sought; (2) the defendant has a clear duty to perform; and (3) no other adequate remedy is available. *Blaney v. U.S.*, 34 F.3d 509, 513 (7th Cir. 1994).

The relief sought in this case is the adjudication of plaintiffs' applications for adjustment of status. Courts in this district have already held that "a petitioner has a right to adjudication of . . . [an] adjustment of status application[] and that INS has a corresponding duty to adjudicate these applications." *Setharatsomphou v. Reno*, 1999 WL 755292, *4 (N.D. Ill. Sept. 27, 1999) (citing *Agbemaple v. INS*, 1998 WL 292441, *1-2 (N.D. Ill. 1998)). This duty is mandatory, not discretionary. *See Paunescu*, 76 F. Supp. 2d at 901. The court finds their reasoning persuasive. Although the statute does not specify a time by which an adjudication should be made, courts have found that "the adjudication must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely." *Agbemaple*, 1998 WL 292441, at *2; *see also Jaffer v. Reno*, 2000 WL 86652, *7 (N.D. Ill. Jan. 19, 2000); *Paunescu*, 76 F. Supp. 2d at 901 ("Defendants . . . had a non-discretionary duty to issue a decision on plaintiffs' applications [for adjustment of status] within a reasonable time.").

Finally, no other adequate remedy is available to plaintiffs. Defendants contend that plaintiffs can wait until the government institutes removal proceedings against them and raise their claims before an Immigration Judge. However, any administrative remedy would be futile,

as the court has already noted. Furthermore, it is not an adequate remedy to merely wait for the INS to adjudicate plaintiffs' applications, because fiscal year 1998 has ended. *Id.*; *see also Fu*, 2000 WL 1644490, at *3 ("Waiting for an agency to act cannot logically be an adequate alternative to an order compelling the agency to act.").

*2. Declaratory Judgment Act*

Because the court has mandamus jurisdiction, it also has jurisdiction under the Declaratory Judgment Act, which "provides an additional remedy where jurisdiction already exists." *Balanyi v. Local 1031, Int'l Brotherhood of Elec. Workers AFL-CIO*, 374 F.2d 723, 726 (7th Cir. 1967); *Amoakowaa*, 94 F. Supp. 2d at 906; *Holasek*, 2000 WL 1761082, at *3. The act provides in relevant part that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Notwithstanding other reasons that would preclude subject matter jurisdiction, the court has jurisdiction to hear plaintiffs' claims under the mandamus statute and the Declaratory Judgment Act.

D. Mootness

Although the court's jurisdiction is not precluded by the INA or by plaintiffs' failure to exhaust administrative remedies, this case presents a more troubling issue–whether the INS has any power to issue visas to plaintiffs now that the fiscal year has expired. "The United States Constitution limits this Court's jurisdiction to live cases and controversies." *Stotts v. Community Unit School Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) (citing U.S. CONST. art. III, § 2). "'A case is moot when the issues presented are no longer 'live' or the parties lack a

13

legally cognizable interest in the outcome.'" *Id.* (citation omitted). "When a case is moot, it must be dismissed as non-justiciable." *Id.*

Pursuant to 8 U.S.C. § 1154(a)(1)(I)(ii)(II), aliens who are selected through the Diversity Program during a particular fiscal year "remain eligible to receive visas only through the end of the specific fiscal year for which they were selected." The end of fiscal year 1998 was September 30, 1998, which means that plaintiffs are no longer eligible to receive visas. This renders the case moot, because the INS cannot issue visa numbers that do not exist to plaintiffs. *See Zapata v. INS*, 93 F. Supp. 2d 355, 358 (S.D. N.Y. 2000) ("The plain meaning of § 1154 is that after the fiscal year has ended on September 30, no diversity visas may be issued *nunc pro tunc* based on the results of the previous fiscal year's visa lottery."); *El Hindi v. McElroy*, 2000 WL 1053873 (S.D. N.Y. July 31, 2000); *Sadowski v. INS*, 107 F. Supp. 2d 451, 454 (S.D. N.Y. 2000) ("When a relevant deadline for adjustment of status has passed, a request for relief is deemed plainly moot, depriving district courts of subject matter jurisdiction.").

Plaintiffs cite *Paunescu* and *Marcetic* for the proposition that the court can order the INS to issue visa numbers after the fiscal year has ended. However, plaintiffs' reliance on these cases appears to be misplaced. In *Paunescu*, after the INS had failed to process the plaintiffs' applications for adjustment of status before the end of the fiscal year, the court ordered the INS to "grant plaintiffs all relief to which they would have been entitled had defendants processed their applications in a timely fashion." *Id.* However, the court in *Paunescu* relied on two important facts which are not present in this case. First, the plaintiff in *Paunescu* was told at his INS interview that his application would be approved; plaintiffs in this case were told no such thing.

14

Second, the court in *Paunescu* had issued a preliminary injunction ordering the INS to adjudicate the plaintiff's application before September 30, 1998, which the INS failed to do. There has been no court order issued in the present case.

*Marcetic* appears to be equally distinguishable. In that case, the plaintiff had already been granted legal permanent residence. However, because of a "bureaucratic error by either the [State] Department or the INS," the plaintiff never received his green card before the end of the fiscal year. *Marcetic*, 1998 WL 173129, at *1. The INS argued that there was no longer a visa number available, and it was therefore without power to issue the plaintiff a green card. Nevertheless, the court ordered the INS "to complete all remaining process of plaintiff's adjustment of status, including issuing a resident alien card." *Id.* at *2. The *Paunescu* court noted the similarities between those two cases: "Plaintiffs are in the same position as the plaintiff in *Marcetic*: Their applications would have been complete *and they would have received visas but for defendants' error.*" *Paunescu*, 76 F. Supp. 2d at 903 (emphasis added). In the present case, however, plaintiffs were never granted any determination in their favor by either the INS or any court before September 30, 1998; they would not have necessarily received visas had the INS adjudicated their applications. Thus, these cases do not apply.

Finally, plaintiffs point to *Silva v. Bell*, 605 F.2d 978 (7th Cir. 1979), in which the INS erroneously charged over 100,000 visa numbers from a limited supply of 120,000 per fiscal year to Cuban applicants. This meant that deserving applicants were injured because their visa applications were delayed. The Seventh Circuit required the government to recapture and reissue the wrongfully issued visa numbers. However, plaintiffs in *Silva* were not statutorily ineligible to

benefit from the INS' recapture program, while plaintiffs in the present case are indeed ineligible to receive visas because the statutory deadline has passed.

Although the court has the jurisdiction to hear the case and the court has the authority through mandamus to compel the INS to adjudicate plaintiffs' applications, it appears that the INS does not have the power to grant effectual relief. Any order by this court compelling the INS to adjudicate plaintiffs' applications would be a futile act. Regrettably, this case must be dismissed as moot.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 27, 2001